1
2
3
4
5
6
7                                                Honorable Ronald B. Leighton
8
9                      **UNITED STATES DISTRICT COURT**
                       **WESTERN DISTRICT OF WASHINGTON**
10
11  RONNI JO RUIZ and JOHN LUIS RUIZ,
    wife and husband,                          NO. 16-cv-06037-RBL
                            Plaintiff,
12                                             DEFENDANT STATE OF
    vs.                                        WASHINGTON DEPARTMENT OF
13                                             CORRECTION'S MOTION FOR
    DEPARTMENT OF CORRECTIONS, a               SUMMARY JUDGMENT
14  Washington State entity; HEALTH PROS
    NORTHWEST, INC., a Washington              **NOTED ON MOTION CALENDAR:**
15  Corporation, THE CITY OF SELAH, a          **October 26, 2018**
    municipality of Yakima County;
16  ANDREW MARK PASCHEN and
    SARILYN PASCHEN, husband and wife,
17  and the marital community composed
    thereof,
18
                            Defendants.
19
                **I.      INTRODUCTION AND RELIEF REQUESTED**
20
21        Defendant Washington State Department of Corrections seeks dismissal of all claims in

22  this employment matter. Plaintiff Ronni Ruiz resigned from her position as a contract Licensed

23  Practical Nurse with Department of Corrections on September 23, 2015 after six months.

24  Mrs. Ruiz now claims the Department of Corrections ("DOC" or "the Department") failed to

25  adequately respond to her complaints of sexual harassment, and retaliated against her for

26  harassment complaints before her resignation. The uncontroverted facts show that DOC

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean`water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1    promptly responded to and investigated each of Mrs. Ruiz's complaints when it was made aware

2    of them. Not only did the Department <u>not</u> retaliate against Mrs. Ruiz for her complaints, her

3    supervisor advocated for a pay raise and offered a more favorable schedule to retain her.

4    Mrs. Ruiz's assertions to the contrary are not evidence, but are merely rank speculation that

5    cannot defeat summary judgment. The Department requests the Court grant summary judgment

6    and dismiss Mrs. Ruiz's claims against it with prejudice.

## II.     STATEMENT OF RELEVANT FACTS

Ronni Ruiz worked as a contract Licensed Practical Nurse (LPN) 2 at the Washington Corrections Center (WCC) in Shelton, Washington.[1] DOC hired Mrs. Ruiz through a healthcare employment agency, HealthPros Northwest.[2] Mrs. Ruiz began her contract employment with DOC on March 16, 2015.[3] Mrs. Ruiz's duties consisted of conducting "the pill line" in WCC's Receiving Units, accompanied by a DOC Corrections Officer (CO).[4] Mrs. Ruiz and the escorting CO would take the pill cart to each unit and issue medications to each offender one at a time.[5]

**Mrs. Ruiz's Sexual Harassment Allegations Against CO Gaither.** In a May 26, 2015 email to nursing supervisor Nancy Fernelius, Mrs. Ruiz requested a replacement for CO Glen Gaither as her pill line escort.[6] Ms. Fernelius instructed Mrs. Ruiz to document her issues with CO Gaither in an incident report.[7] On June 1, 2015, Mrs. Ruiz submitted an Incident Report indicating that CO Gaither was sexually harassing her by telling other officers they were "romantically involved"; giving her his personal phone number; and telling her that "50 year old

---

[1] Declaration of Patricia (Patty) Paterson ("Paterson Decl."), ¶ 3.

[2] Paterson Decl., ¶ 3; Declaration of Mae Wheelwright ("Wheelwright Decl."), ¶ 3.

[3] Paterson Decl., ¶ 3; Wheelwright Decl., ¶ 3.

[4] Declaration of Amee J. Tilger ("Tilger Decl."), Ex. A (R. Ruiz Dep. at 50:16-51:1); Paterson Decl., ¶ 3.

[5] Tilger Decl., Ex. A (R. Ruiz Dep. at 50:16-51:1), Ex. C (Gaither Dep. at 9:3-24); Paterson Decl., ¶ 3.

[6] Tilger Decl., Ex. A (R. Ruiz Dep. at 35:3-18, 36:12-37:5); Declaration of Nancy Fernelius ("Fernelius Decl."), ¶ 4, Ex. A.

[7] Fernelius Decl., ¶ 4, Ex. A.

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean`water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1    bald men make good boyfriends." She also alleged that he inappropriately used the word

2    "Hindi".[8] CO Gaither was reassigned pending an investigation on or about June 9, 2015.[9]

3        Lt. Andrew Williams conducted the fact-finding investigation into Mrs. Ruiz's claims

4    against CO Gaither.[10] CO Gaither denied starting rumors, but admitted giving Mrs. Ruiz his

5    personal number in case she wanted to speak to someone about personal problems she had shared

6    with him.[11] There were no witnesses to the behavior or comments reported by Mrs. Ruiz, or any

7    inappropriate behavior between the two.[12] Lt. Williams attempted to interview Mrs. Ruiz on

8    June 23, 2015. Mrs. Ruiz informed him she was resigning and indicated she did not want the

9    matter pursued.[13] Lt. Williams concluded in his report that the allegations were "compelling"

10   but Mrs. Ruiz "could not provide any witness that had direct and personal knowledge to support

11   or substantiate her allegations against Officer Gaither . . . . [S]he has put in her two-week

12   separation of state employment and did not seem to want to push the issue any further by

13   elaborating on her initial statement. Officer Gaither denies any such behavior, or the deliberate

14   use of racial slurs. Simply put this comes down to one staff's word against another."[14] The matter

15   concluded as unfounded on June 30, 2015.[15] Mrs. Ruiz made no other complaints about CO

16   Gaither.

17       In early July 2015, Mrs. Ruiz subsequently rescinded her resignation after negotiating a

18   higher wage and improved work schedule with HealthPros Northwest and WCC.[16]

19       **Offender Fisher's Attempt to Pass A Note To Mrs. Ruiz.** In July 2015, Mrs. Ruiz

20   reported that Offender Dwayne Fisher had tried to hand her a letter during pill line, which she

---

21

22   [8] Declaration of Andrew Williams ("Williams Decl."), ¶ 4, Ex. A; Fernelius Decl., ¶ 5, Ex. B.
     [9] Tilger Decl., Ex. A (R. Ruiz Dep. at 48:10-49:1, 50:6-15).

23   [10]Williams Decl., ¶¶ 4-6, Ex. A.
     [11]Williams Decl., ¶ 4, Ex. A; Tilger Decl., Ex. C (Gaither Dep.at 14:10-15:23).

24   [12]Williams Decl., ¶ 6, Ex. A.
     [13] Tilger Decl., Ex. A (R. Ruiz Dep. at 37:24-38:11, 182:6-184:14); Williams Decl., ¶ 5, Ex. A.

25   [14] Williams Decl., ¶ 6, Ex. A.
     [15] Williams Decl., ¶ 6, Ex. A.

26   [16] Tilger Decl., Ex. A (R. Ruiz Dep. at 75:21-77:6, 79:13-80:13, 185:11-24); Paterson Decl., ¶ 6.

DEFENDANT STATE OF                                          3                    ATTORNEY GENERAL OF WASHINGTON
WASHINGTON DEPARTMENT OF                                                                    Torts Division
CORRECTIONS' MOTION FOR                                                              7141 Clean'water Drive SW
SUMMARY JUDGMENT                                                                            PO Box 40126
No. 16-06037-RBL                                                                       Olympia, WA 98504-0126
                                                                                            (360) 586-6300

refused to take.[17] Correctional staff instructed Mrs. Ruiz to return to Offender Fisher's cell to retrieve the letter as "evidence," which she did.[18] After the incident, nursing supervisor Patty Paterson instructed Mrs. Ruiz she should have left that task for the officers on the tier; nursing staff should not take anything from an incarcerated individual.[19] Mrs. Ruiz documented the event in an Incident Report dated July 16, 2015.[20] Offender Fisher was placed in the Intensive Management Unit as a sanction for this attempt; Mrs. Ruiz received no corrective action.[21]

**Mrs. Ruiz's Issues with WCC Nursing Supervisors.** Mrs. Ruiz struggled with tardiness and attendance throughout her employment at WCC, for which she received counseling from Ms. Paterson.[22] In July or early August 2015, Ms. Paterson counseled Mrs. Ruiz about the amount of perfume and lotion she used and leaving makeup on the pill cart after receiving staff complaints.[23] Ms. Paterson expressed concerns to Mrs. Ruiz about wearing strong fragrances in a "hospital environment" where some people are sensitive to heavy odors.[24] Ms. Paterson and Mrs. Ruiz also discussed that applying makeup in front of offenders and wearing strong perfume around offenders might be misperceived by them and attract unwelcome attention from them.[25]

In August 2015, WCC's nursing staff needs changed so that contract nursing staff was not needed on Tuesdays, and Ms. Paterson eliminated Mrs. Ruiz's Tuesday hours.[26] Several weeks later, staffing needs for Tuesdays changed and Mrs. Ruiz's Tuesday hours were restored.[27] Mrs. Ruiz applied for a permanent LPN position with DOC at WCC in or around August 2015. Ms. Fernelius declined to interview Ms. Ruiz for a permanent position until her attendance issues

---

[17] Tilger Decl., Ex. A (R. Ruiz Dep. at 92:23-93:9); Paterson Decl., ¶ 7.
[18] Tilger Decl., Ex. A (R. Ruiz Dep. at 92:23-93:9); Paterson Decl., ¶ 7.
[19] Paterson Decl., ¶ 7, Ex. F.
[20] Paterson Decl., ¶ 7.
[21] Paterson Decl., ¶7, Ex. F.
[22] Paterson Decl., ¶5, Exs. B, D, and E; Fernelius Decl., ¶ 3.
[23] Paterson Decl., Ex. G.
[24] Paterson Decl., ¶ 8.
[25] Paterson Decl., ¶ 8, Ex. H.
[26] Paterson Decl., ¶ 9.
[27] Paterson Decl., ¶ 9.

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

4

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

improved.[28] Mrs. Ruiz routinely worked overtime without permission until early September 2015, until Ms. Paterson counseled Mrs. Ruiz about working unauthorized overtime hours as it negatively impacted the nursing unit's budget.[29] Mrs. Ruiz agreed to leave promptly at the end of her shift going forward.[30] Mrs. Ruiz gave notice in a September 10, 2015 email of her intention to resign her position effective September 28, 2015 at the end of her three-month contract with Health Pros Northwest.[31] In her email, Mrs. Ruiz offered to fill in on weekends and holidays, and to train her replacement.[32]

**Offender Handy's Communications with Mrs. Ruiz.** In or around September 2015, Offender Ulysses Handy, a convicted murderer serving a life sentence, passed Mrs. Ruiz several letters during pill line.[33] The letters contained sexually explicit content, personal information about Offender Handy, plans for them to meet alone in the facility, and have future ongoing contact.[34] Mrs. Ruiz took the letters from Offender Handy but did not immediately turn them in or report them.[35]

Mrs. Ruiz abruptly left mid-shift on September 23, 2015 without completing pill line and without properly logging some narcotics.[36] On that date, she reported the Handy letters to DOC.[37] Mrs. Ruiz also reported for the first time that Offender Handy had exposed himself to her and masturbated multiple times, most recently that same day.[38] Shift Commander Lt. Williams ordered Mrs. Ruiz to turn over the letters and complete an Incident Report before leaving the facility.[39] Mrs. Ruiz said she held on to the letters from Offender Handy because she

---

[28] Fernelius Decl., ¶ 6, Ex. C.
[29] Paterson Decl., ¶ 10, Exs. C and I.
[30] Paterson Decl., ¶ 10, Ex. I.
[31] Paterson Decl., ¶ 11, Ex. J; Fernelius Decl., ¶ 7, Ex. D.
[32] Paterson Decl., ¶ 11, Ex. J; Fernelius Decl., ¶ 7, Ex. D.
[33] Tilger Decl., Ex. A (R. Ruiz Dep. at 102:17-103:2, 154:19-23, 166:4-9).
[34] Svoboda Decl., Ex. A (Exhibit 16, pages 1-16)
[35] Tilger Decl., Ex. A (R. Ruiz Dep. at 154:15-23, 156:20-157:4, 162:14-23; Paterson Decl., Ex. K.
[36] Tilger Decl., Ex. A (R. Ruiz Dep. at 115:12-116:3); Paterson Decl., Ex. L; Fernelius Decl., ¶ 9, Ex. E.
[37] Tilger Decl., Ex. A. (R. Ruiz Dep. at 156:20-157:4).
[38] Tilger Decl., Ex. A (R. Ruiz Dep. at 154:24-156:1).
[39] Williams Decl., ¶ 8, Exs. B and C.

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

5

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

did not know what to do with them and was afraid of angering Ms. Paterson.[40] Mrs. Ruiz had no further contact with Offender Handy at WCC after her report to Lt. Williams. She did not return to work at DOC after September 23, 2015.[41]

**DOC Investigates Mrs. Ruiz's Complaints About Offender Handy.** DOC initiated an investigation following Mrs. Ruiz's disclosures about Offender Handy because these behaviors required mandatory reporting under the Prison Rape Elimination Act (PREA),[42] which Mrs. Ruiz had not done.[43] Mrs. Ruiz's training history reflected she had received PREA training on June 2, 2015.[44] DOC Workplace Investigator Scott Svoboda was assigned to conduct this investigation.[45]

On or about October 19, 2015, Investigator Svoboda learned that Mrs. Ruiz had received numerous collect telephone calls from Offender Handy as well as telephone calls from his mother the preceding weekend.[46] DOC issued to Offender Handy a Communication Cessation for Phone and Mail Correspondence regarding Mrs. Ruiz on October 19, 2015.[47] During the course of his investigation, Investigator Svoboda learned that Offender Handy had obtained Mrs. Ruiz's telephone number and mailing address from Andrew Paschen, then-court administrator for Selah Municipal Court.[48] Mr. Paschen was initially charged with felony

---

[40] Tilger Decl., Ex. A. (R. Ruiz Dep. at ); Williams Decl., Ex. C.

[41] Tilger Decl., Ex. A (R. Ruiz Dep. at 190:15-17); Paterson Decl., ¶ 13; Wheelwright Decl., ¶ 7.

[42] PREA is a federal law prohibiting sexual misconduct in prison settings. Due to the power imbalance between offenders and employees in a correctional setting, sexual interaction between them is unprofessional, unethical, illegal, and can never be considered consensual. The law and policy apply to both employees and contracted staff. *See* Wheelwright Decl., Ex. B; Svoboda Decl., Ex. A (Exhibit 26 to Investigation Report.)

[43] Williams Decl., ¶ 9, Ex. D.

[44] Paterson Decl., Ex. A; Wheelwright Decl., Ex. A.

[45] Svoboda Decl., ¶¶ 5-6, Ex. A (Investigation Report at p. 1 of 45).

[46] Svoboda Decl., ¶ 4, Ex. A (Investigation Report at p. 44 of 45); Tilger Decl., Ex. A (R. Ruiz Dep. at 220:4-22).

[47] Svoboda Decl., ¶ 4, Ex. A (Investigation Report at p. 45 of 45); Tilger Decl., Ex. A. (R. Ruiz Dep. at 220:23-222:1).

[48] Svoboda Decl., Ex. A (Investigation Report at p. 31 of 45); Tilger Decl., Ex. A. (R. Ruiz Dep. at 119:20-25).

---

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  computer trespassing in Yakima County Superior Court. The felony charge was dismissed in

2  exchange for Mr. Paschen's guilty plea to misdemeanor computer trespassing.[49]

### III.   LEGAL AUTHORITY

**A.   Summary Judgment Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.[50] The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[51] "A properly supported summary judgment motion cannot be defeated by relying upon conclusory allegations, improbable inferences, acrimonious invective, or rank speculation."[52] A defendant may move for summary judgment by 1) simply pointing out to the trial court that the plaintiff lacks sufficient evidence to support the essential elements of his or her claim; or 2) providing declarations demonstrating the absence of a genuine issue of material fact.[53] Here, the Department relies on both techniques to support summary judgment.

**B.   Mrs. Ruiz's Sexual Harassment Claims Fail As A Matter Of Law**

**1.   Mrs. Ruiz cannot establish a prima facie case**

Mrs. Ruiz alleges gender-based hostile work environment claims under both state and federal law.[54] To establish a gender-based hostile work environment, Mrs. Ruiz must prove: 1) she was subjected to unwelcome, hostile, or abusive conduct; 2) the conduct was based on her

---

[49] Tilger Decl., Ex. F (Andrew Paschen's Response to Interrogatory No. 4 of Plaintiffs' First Interrogatories and Requests for Production.)

[50] *Brauss v. U.P.S.*, CV-09-356-LRS, *1, 2011 WL 204871 (E.D. Wash. Jan. 21, 2011) (citing *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025 (1975)). *See also Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999) (Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events).

[51] Fed. R. Civ. P. 56.

[52] *Lewis v. Whitman-Hanson Reg'l Sch. Dist.*, 843 F. Supp. 2d 182, 191 (D. Mass. 2012). *See also Pineda v. City of Seattle*, C06-05157RSL, *5, 2006 WL 3386865 (W.D. Wash. Nov. 20, 2006) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993)) ("[C]onclusory allegations of discrimination are insufficient to defeat a motion for summary judgment.").

[53] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[54] Dkt. 23 at ¶¶ 5.1-5.3, 5.9.

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

7

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean`water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

gender; 3) the conduct was sufficiently severe or pervasive to affect the terms and conditions of her employment; and 4) the unwelcome, hostile, or abusive conduct is imputable to the employer.[55] Assuming solely for the purposes of this motion that Mrs. Ruiz presents an issue of fact as to whether she was subjected to unwelcome, hostile, or abusive conduct because of her gender, Mrs. Ruiz's hostile work environment claim fails because she cannot satisfy the other elements of this claim.

### a.   The conduct was not severe or pervasive

Mrs. Ruiz has identified only two instances of gender-based conduct that may contribute to a hostile work environment: 1) CO Gaither's alleged suggestive comments to her, giving her his telephone number, and indicating to others they were romantically involved;[56] and 2) Offender Handy passing her letters and allegedly exposing himself to her.[57] She additionally claims that admonishments by her supervisor about her attendance, use of cosmetics and fragrance in the workplace, maintaining appropriate boundaries with offenders and staff, and a temporary reduction in her hours constitutes actionable gender-based conduct.[58] However, these allegations are not gender-based harassment as a matter of law, but rather are the type of work-related actions that courts have declined to consider a hostile work environment.[59]

Courts consider all the circumstances in determining whether the complained-of conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment, including the frequency of the discriminatory conduct; its

---

[55] *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2004); *Fisher v. Tacoma Sch. Dist. No. 10*, 53 Wn. App. 591, 595-96, 769 P.2d 318, *rev. denied*, 112 Wn.2d 1027 (1989).

[56] Tilger Decl., Ex. A (R. Ruiz Dep. at 35:3-18, 36:12-37:5); Williams Decl., Ex. A.; Fernelius Decl., Ex. B.

[57] Tilger Decl., Ex. A (R. Ruiz Dep. at 102:17-103:1, 154:19-156:1, 166:4-9); Williams Decl., Ex. C.

[58] Tilger Decl., Ex. A (R. Ruiz Dep. at 34:5-24, 62:12-19, 64:7-11, 67:13-68:14, 74:11-16).

[59] *Vasquez*, 349 F.3d at 642; *see also Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (holding that Title VII is not a "general civility code for the American workplace" because it "does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion]* ... because of ... [protected class]'"). *See Brooks v. Grundmann*, --- F. Supp. 2d ---, 2012 WL 1057944, at *5 (D.D.C. 2012); *see also Taylor v. Fairfield Resorts, Inc.*, No. 07-01602, 2009 WL 3786080, at *14 (D. Nev. Nov. 10, 2009).

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

2  whether it unreasonably interferes with an employee's work performance; and whether the

3  working environment is both subjectively and objectively perceived as abusive.[60]

4  The above-described two incidents involving Gaither and Handy are insufficient to

5  establish a gender-based hostile work environment as a matter of law.[61] Even if the remaining

6  conduct Mrs. Ruiz takes issue with could theoretically contribute to a hostile work environment,

7  Mrs. Ruiz would still be unable to establish conduct sufficiently pervasive or abusive to

8  constitute a hostile work environment.[62]

9  **b.    The alleged harassment cannot be imputed to the Department**

10  Even if the complained-of conduct were severe or pervasive, Mrs. Ruiz's claim fails

11  because she cannot impute the harassment to DOC. The individuals against which Mrs. Ruiz

12  alleges gender-based harassment—CO Gaither and Offender Handy—were not managers, thus

13  her allegations fall into the category of coworker harassment. An employer is subject to liability

14  for coworker harassment if it knows or should have known about the harassment and failed to

15  redress that harassment adequately.[63] Coworker harassment liability is not based on respondeat

16

17  [60] *Vasquez*, 349 F.3d at 642 (footnotes and quotation marks omitted).

   [61] *Walk v. Rubbermaid Inc.*, 76 F.3d 380, 1996 WL 56203, at *2 (6th Cir. 1996) (calling plaintiff "fucking
18  menopausal bitches" two or three times did not establish a hostile work environment); *Hollins v. Premier Ford
   Lincoln Mercury, Inc.*, 766 F.Supp.2d 736, 743 (N.D. Miss. 2011) (calling plaintiff "black bitch" and "fucking
   bitch" did not establish a hostile work environment); *Augustin v. Yale Club*, No. 03-1924, 2006 WL 2690289, at
19  *21-22 (S.D.N.Y. Sept. 15, 2006) (calling plaintiff "fucking negrita" and "black bitch" did not establish a hostile
   work environment); *Stepheny v. Brooklyn Hebrew Sch. for Special Children*, 356 F. Supp. 2d 248, 264 (E.D.N.Y.
20  2005) (calling plaintiff "white bitch" or some variation thereof five times did not establish a hostile work
   environment).

21  [62] The Ninth Circuit has affirmed summary dismissal of a hostile work environment claim when faced with
   even more severe conduct. *See Vasquez*, 349 F.3d at 643 (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1031,
22  1036 (9th Cir. 1990) (allegations that the employer posted a racially offensive cartoon, made racially offensive slurs,
   targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup
23  to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino did not constitute a hostile
   work environment.)

24  [63] *See Mukaida v. Hawaii*, 159 F. Supp. 2d 1211, 1232-33 (D. Haw. 2001); *Star v. West*, 237 F.3d 1036,
   1038 (9th Cir.2001); *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir.1999) (noting that an employer may
25  only be found liable in a hostile work environment case involving coworkers for what management-level employees
   "knew or should have known"); 29 C.F.R. § 1604.11(d) ("With respect to conduct between fellow employees, an
26  employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or

DEFENDANT STATE OF                             9                ATTORNEY GENERAL OF WASHINGTON
WASHINGTON DEPARTMENT OF                                                Torts Division
CORRECTIONS' MOTION FOR                                            7141 Clean water Drive SW
SUMMARY JUDGMENT                                                          PO Box 40126
No. 16-06037-RBL                                                     Olympia, WA 98504-0126
                                                                        (360) 586-6300

superior, but instead on the employer's own negligence.[64] Mrs. Ruiz cannot put forward any competent evidence that DOC management knew or should have known of CO Gaither's or Offender Handy's alleged offensive conduct toward her before she lodged her complaints. In fact, the uncontroverted evidence shows that as soon as Mrs. Ruiz notified DOC management of the conduct, DOC took steps to separate Mrs. Ruiz from the alleged perpetrators and investigate her allegations.[65] As Mrs. Ruiz complained of no further incidences, DOC's efforts to address the harassment were adequate as a matter of law.[66]

> **2.      DOC promptly took corrective measures to address Mrs. Ruiz's complaints when it became aware of them**

Even if Mrs. Ruiz were able to establish a prima facie case of a hostile work environment (which she cannot), an employer is not liable for a hostile work environment if 1) the employer "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and 2) the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[67]

Here, DOC had a sexual harassment awareness and prevention policy and made sure its employees were aware of this policy.[68] Thus, DOC exercised reasonable care to prevent discriminatory harassment.[69] Mrs. Ruiz also failed to reasonably take advantage of DOC's

---

supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action").

[64] *See Mikels v. City of Durham, N.C.,* 183 F.3d 323, 332 (4th Cir.1999); *Richardson v. New York State Dep't of Correctional Serv.,* 180 F.3d 426, 441 (2d Cir.1999); *Wilson v. Chrysler Corp.,* 172 F.3d 500, 508 (7th Cir.1999) ("Liability for co-worker harassment requires a showing of negligence on the part of the employer"); *Sharp v. City of Houston,* 164 F.3d 923, 929 (5th Cir.1999) ("An employer may be liable for sexual harassment if it 'knew or should have known of the harassment in question and failed to take prompt remedial action.' This standard was not disturbed by *Faragher* or *Burlington* ") (internal citation omitted).

[65] Tilger Decl., Ex. A (R. Ruiz Dep. at 48:10-49:1, 50:6-15); Williams Decl., ¶ 4, 7, Exs. A-D.

[66] *See Swenson v. Potter,* 271 F.3d 1184, 1195-96 (9th Cir. 2001).

[67] *Mukaida v. Hawaii,* 159 F. Supp. 2d 1211, 1232-33 (D. Haw. 2001) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 807-08 (1998); *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998)).

[68] Wheelwright Decl., ¶¶ 4-6, Exs. B-G.

[69] *Hardage v. CBS Broad., Inc.,* 427 F.3d 1177, 1185 (9th Cir. 2005) (affirming dismissal of hostile work environment claim and holding that the employer "fulfilled its duty to take *preventive* measures as a matter of law by adopting and promoting awareness of its anti-harassment policy").

DEFENDANT STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS' MOTION FOR SUMMARY JUDGMENT No. 16-06037-RBL                    10                    ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean`water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  preventative or corrective opportunities because, as indicated above, 1) she chose not to

2  participate in the investigation into her complaint about CO Gaither and 2) she did not complain

3  about harassment by Offender Handy until September 23, 2015 when she walked off the job.[70]

4  When an employee waits until after she is no longer in the work environment to complain about

5  harassment, that employee's efforts are unreasonable because they prevent the employer from

6  being able to rectify the situation while it still exists.[71]

7      Finally, DOC also took reasonable efforts to correct any alleged harassment by

8  conducting investigations after receiving Mrs. Ruiz's complaints.[72] "'[T]he most significant

9  immediate measure an employer can take in response to a sexual harassment complaint is to

10 launch a prompt investigation to determine whether the complaint is justified. By simply opening

11 an investigation, 'the employer puts all employees on notice that it takes such allegations

12 seriously and will not tolerate harassment in the workplace.'"[73] Once Mrs. Ruiz complained

13 about CO Gaither's and Offender Handy's actions, DOC promptly launched investigations into

14 Mrs. Ruiz's harassment allegations.[74]

---

[70] Tilger Decl., Ex. A (R. Ruiz Dep. at 37:24-38:11, 156:20-157:4, 182:6-184:14); Williams Decl., ¶¶ 5, 8-9, Exs. A-D; Svoboda Decl., ¶ 2 Ex. A. *See Cirocco v. McMahon*, 294 F.Supp.3d 1086, 1096 (D. Colo. 2018)(plaintiff's failure to participate in EEOC investigation into Title VII claims resulted in finding she failed to exhaust administrative remedies).

[71] *Duviella v. Counseling Serv. of E. Dist. of New York*, No. 00–2424, 2001 WL 1776158, at *14 (E.D.N.Y. Nov. 20, 2001) (hostile work environment claim dismissed where employee did not complain of sexual harassment until the day she quit, which did not permit employer the opportunity to address the harassing conduct while it was occurring); *Mukaida*, 159 F. Supp. 2d at 1232-33 (hostile work environment claim dismissed where employee did not report harassment until it ended, denying defendants the opportunity to correct the harassment.)

[72] Williams Decl., Ex. A; Svoboda Decl., Ex. A.

[73] *Nixon v. Franciscan Health Sys.*, No. 11-5076, 2012 WL 1068070, at *3 (W.D. Wash. Mar. 29, 2012) (quoting *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001) (Settle, J.).

[74] Williams Decl., Ex. A; Svoboda Decl., Ex. A.

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

**C.    Mrs. Ruiz's Negligent Hiring/Supervision/Retention Claim Fails As A Matter of Law**

      **1.    This claim is factually duplicative of Mrs. Ruiz's hostile work environment claim**

Mrs. Ruiz bases this claim on the allegations that her supervisor at DOC was "negligently retained or negligent in [her] role[] as a supervisor" by "fail[ing] to adequately create a workspace that promoted reports of sexual harassment and unlawful behavior" and that DOC "failed in [its] duties to properly supervise the work environment."[75] These allegations are factually duplicative of the conduct Mrs. Ruiz alleges in support of her hostile work environment claims.[76] Where a plaintiff employee alleges both RCW 49.60 claims and negligent supervision claims under the same facts, courts have routinely dismissed negligent supervision claims as duplicative so as not to allow double recovery for the same injury.[77] This Court should likewise dismiss Mrs. Ruiz's negligent hiring/supervision/retention claim here as duplicative.

      **2.    The negligent supervision claim fails because the actions of the involved DOC employees were within the scope of their employment**

The theory of negligent supervision creates a limited duty to control an employee for the protection of third parties where the employee is acting outside the scope of employment.[78] But when an employee commits negligence within the scope of employment, a different theory of liability—vicarious liability—applies.[79] Under Washington law, therefore, a claim for negligent supervision is generally improper when the employer concedes the employee's actions occurred within the course and scope of employment.[80] Dismissal of a negligent supervision claim based

---

[75] Dkt. 23 at ¶ 5.5.

[76] Dkt. 23 at ¶ 4.5.

[77] *See, e.g.*, *Francom v. Costco Wholesale Corp.*, 98 Wash. App. 845, 866, 991 P.2d 1182 (2000); *Haubry v. Snow*, 106 Wash. App. 666, 679-80, 31 P.3d 1186 (2001).

[78] *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 51,  929 P.2d 420 (1997); *Briggs v. Nova Servs.,* 135 Wn. App. 955, 966–67, 147 P.3d 616 (2006), *aff'd,* 166 Wn.2d 794, 213 P.3d 910 (2009) ("A negligent supervision claim requires showing: (1) an employee acted outside the scope of his or her employment").

[79] *Niece*, 131 Wash.2d at 51.

[80] *Davis v. Clark County, Wash.*, 966 F.Supp.2d 1106, 1140 (W.D. Wn. 2013); *Gilliam v. Dep't of Soc. & Health Servs.*, 89 Wash.App. 569, 584–585, 950 P.2d 20 (1998).

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  on allegedly discriminatory conduct is also appropriate where the plaintiff cannot establish she

2  was the subject of discrimination.[81]

3      Again, Mrs. Ruiz alleges that her supervisor "failed to adequately create a workspace

4  that promoted reports of sexual harassment and unlawful behavior" and DOC "failed in [its]

5  duties to supervise the work environment."[82] The Department and Mrs. Ruiz concur that the

6  actions of Ms. Ruiz's supervisor and other employees occurred within the course and scope of

7  employment. Thus, any claim of negligent supervision as to Mrs. Ruiz's supervisor or DOC is

8  improper, and the Court should therefore dismiss it.

9  **D.   Mrs. Ruiz's Retaliation Claims Fail As A Matter Of Law**

10     In retaliation claims lacking direct evidence of retaliatory intent, the court employs the

11  following four-step burden shifting scheme to rule on summary judgment motions:[83]

12   1)  First, Mrs. Ruiz bears the burden of establishing a prima facie case of retaliation.[84]
        Failure to allege "specific facts" that establish a prima facie case renders a grant of
13       summary judgment appropriate.[85]

14   2)  Second, if Mrs. Ruiz does establish a prima facie case, the burden shifts to the
        Department to articulate, not prove, a legitimate, non-retaliatory reason for the
15       adverse employment action.[86]

16   3)  Third, the burden shifts back to Mrs. Ruiz to demonstrate that the Department's
        stated reasons were pretext for retaliation.[87] To show pretext using circumstantial

---

[81]*Herried v. Pierce Co. Public Transp. Benefit Auth. Corp.*, 90 Wash. App. 468, 475, 957 P.2d 767 (1998).
[82] Dkt. 23 at ¶ 5.5.

[83] *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (Title VII plaintiff may prove his case through circumstantial evidence using *McDonnell Douglas* the burden-shifting framework); *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 126, 128 (11th Cir. 2008) (the *McDonnell Douglas* burden shifting framework applies to FMLA claims of retaliation.)

[84] *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-3 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[85] *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1409 (9th Cir. 1987) (quoting *Yartzoff*, 809 F.2d at 1374); *see* Fed.R.Civ.P. 56(e).

[86] *Burdine*, 450 U.S. at 254; *McDonnell*, 411 U.S. at 802.

[87] *Burdine*, 450 U.S. at 256; *McDonnell*, 411 U.S. at 804-5; *Jurado*, 813 F.2d at 1411 ("The order of allocation of proof for Title VII disparate treatment cases outlined in *McDonnell Douglas Corp. v. Green* also governs actions for retaliatory discharge under section 704(a).")

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

13

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean`water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1    evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives."[88] Failure to do so results in dismissal.[89]

2    4) Fourth, even if Mrs. Ruiz presents sufficient evidence of pretext, summary judgment is still appropriate if he fails to prove that retaliatory animus were a substantial factor in the adverse action.[90]

3

4

5    Mrs. Ruiz's retaliation claims fail at each and every step of this analysis, providing

6    multiple, independent bases for dismissing her claims with prejudice.

7    **1.    Mrs. Ruiz cannot establish a prima facie case of retaliation**

8    To establish a prima facie retaliation case, Mrs. Ruiz must show that 1) she engaged in

9    an activity protected by Title VII and/or WLAD, 2) DOC subjected her to an adverse

10   employment action, and 3) a causal link exists between the protected activity and the adverse

11   employment action.[91] For this motion, the Department does not dispute that Mrs. Ruiz engaged

12   in protected activity by complaining about alleged harassment by CO Gaither and

13   Offender Handy, and that she suffered an adverse employment action, i.e., a temporary reduction

14   in work hours and not being interviewed for a permanent position.[92] However, Mrs. Ruiz cannot

15   demonstrate a causal link exists between any protected activity and an adverse employment

16   action. Accordingly, Mrs. Ruiz's retaliation claims should be dismissed for failure to establish a

17   prima facie case.

18   [88] *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002); *Allfrey v. Mabus*, 770 F. Supp. 2d 1128, 1134 (W.D. Wash. 2011).

19   [89] *Villiarimo*, 281 F.3d at 1063 ("Because Villiarimo has not shown that the reasons Aloha offers for her termination are pretextual, then, her claim for gender-based discrimination in violation of Title VII must fail.").

20   [90] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

21   [91] *Jurado*, 813 F.2d at 1411 (Title VII); *Tyner v. State*, 137 Wn. App. 545 154 P.3d 920, 929 (2007) (WLAD).

22   [92] *See Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 928-9 (9th Cir. 2000) ("Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion.   By contrast, we have held that declining to hold a job open for an employee and badmouthing an employee outside the job reference context do not constitute adverse employment actions."). Mrs. Ruiz's allegation that she was counseled about her appearance and use of cosmetics does not constitute an adverse employment action. Tilger Decl., Ex. A (R. Ruiz Dep. at 34:5-24, 62:12-19, 64:7-11, 67:13-68:14, 74:11-16.) *See Mungin v. Katten, Muchin & Zavis,* 116 F.3d 1549, 1557 (D.C.Cir.1997) ("Changes in assignments or work related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work-hour change.")

23

24

25

26

1    Retaliation claimants must present evidence from which a reasonable fact finder can

2    conclude that the decision maker was aware the employee engaged in protected activity.[93]

3    Causation may be inferred in retaliation cases from timing alone when an adverse action "follows

4    on the heels of protected activity."[94] Unless there is very close temporal proximity between the

5    protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to

6    establish causation.[95] Here, Mrs. Ruiz complained about CO Gaither's alleged sexual harassment

7    in early June 2015, and the adverse employment actions she alleges as a result (reduction in work

8    hours and not being interviewed for a permanent position) occurred in August 2015. This

9    two-month period is insufficient alone to infer causation between these events.

10    Mrs. Ruiz also fails to establish causation because she cannot show she was singled out.

11    A plaintiff fails to demonstrate a causal link when she cannot show that similarly situated

12    employees were treated differently.[96] Again, other than Mrs. Ruiz's assertions, there is no

13    evidence that she was treated differently than other similarly situated employees.[97] Without

14    demonstrating the requisite causal link, Mrs. Ruiz's prima facie case fails and her claim of

15    retaliation should be dismissed accordingly.

16

---

17    [93] *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (teacher's retaliation claims dismissed because she failed to point

18    to any evidence in the record supporting her assertions that the decision makers were actually aware of her complaints).

19    [94] *Villiarimo*, 281 F.3d at 1065.

20    [95] *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). *See Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997). "[W]e have held that a one and one-half month period between protected

21    activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation." *See also Fazeli v. Bank of Am., NA*, 525 Fed.Appx. 570, 571 (9th Cir. 2013) (finding that less than three months was insufficient to infer causation in light of other evidence that

22    no causal link existed).

23    [96] *Evans v. Fed. Exp. Corp.*, 468 F. App'x 746, 747 (9th Cir. 2012) ("Evans failed to show a causal link between those adverse actions and his protected activities. In particular, Evans failed to show that similarly situated individuals were treated differently from him.").

24    [97] *See Anderson v. Fresno Cnty.*, 342 F. App'x 255, 258 (9th Cir. 2009) ("[Anderson] introduced no evidence that similarly situated non-African-American employees were treated more favorably...Anderson

25    introduced no evidence regarding whether her co-workers were also members of Anderson's protected class, whether they were similarly situated in all material respects, and whether she alone was required to serve a second

26    year of probation.").

DEFENDANT STATE OF                                    15                    ATTORNEY GENERAL OF WASHINGTON
WASHINGTON DEPARTMENT OF                                                              Torts Division
CORRECTIONS' MOTION FOR                                                          7141 Clean`water Drive SW
SUMMARY JUDGMENT                                                                       PO Box 40126
No. 16-06037-RBL                                                                 Olympia, WA 98504-0126
                                                                                      (360) 586-6300

1    **2.      DOC had legitimate non-retaliatory reasons for its actions**

2         Even if Mrs. Ruiz could establish a prima facie case for retaliation, DOC had legitimate

3    non-retaliatory reasons for the complained-of adverse employment actions.[98] Mrs. Ruiz's hours

4    were temporarily reduced due to staffing needs and were increased when staffing needs

5    subsequently changed.[99] Mrs. Ruiz was not asked to interview for a permanent position due to

6    her indisputable track record of substandard attendance as a contract employee.[100]

7    **3.      Mrs. Ruiz cannot show pretext**

8         Even if Mrs. Ruiz were to establish a prima facie case of retaliation, her claims

9    nonetheless fail as a matter of law for her inability to prove pretext. Mrs. Ruiz is required to

10   provide evidence that DOC's stated reasons for its employment actions were not the "true

11   reason."[101] She may do this "either directly by persuading the court that a discriminatory reason

12   more likely motivated the employer or indirectly by showing that the employer's proffered

13   explanation is unworthy of credence."[102] In conducting this pretext analysis, whether the

14   employer's stated reason for an adverse employment action was in fact true, is irrelevant. Rather,

15   the relevant inquiry is whether the employer honestly believed the reason when it made the

16   decision.[103] However, when a plaintiff relies upon circumstantial evidence to show pretext, that

17   evidence must be "specific and substantial" to defeat the employer's motion for summary

18   judgment.[104]

19        Here, DOC honestly believed its stated reasons for temporarily reducing her hours and

20   declining to interview her. Mrs. Ruiz's subjective beliefs to the contrary are not substantial and

21   _____

22   [98] *Burdine*, 450 U.S. at 254; *McDonnell*, 411 U.S. at 802.
     [99] Paterson Decl., ¶ 9.
23   [100] Fernelius Decl., ¶ 6, Ex. C.
     [101] *Burdine*, 450 U.S. at 256 (citing *McDonnell*, 411 U.S. at 804-5).
     [102] *Id.*; *Villiarimo*, 281 F.3d at 1062.
24   [103] *Villiarimo*, 281 F.3d at 1063 ("In judging whether Aloha's proffered justifications were false, is it not
     important whether they were *objectively* false (e.g. whether Villiarimo *actually* lied).  Rather, courts only require
25   that an employer honestly believed its reasons for its actions, even if its reason is foolish, trivial or even baseless.")
     (emphasis in original) (internal quotations omitted).
     [104] *Coghlan v. American Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005).

26

DEFENDANT STATE OF                                    16                ATTORNEY GENERAL OF WASHINGTON
WASHINGTON DEPARTMENT OF                                                         Torts Division
CORRECTIONS' MOTION FOR                                                      7141 Clean`water Drive SW
SUMMARY JUDGMENT                                                                    PO Box 40126
No. 16-06037-RBL                                                              Olympia, WA 98504-0126
                                                                                   (360) 586-6300

specific evidence to contradict the Department's honestly-held beliefs.[105] It is not unlawful for an employer to make a decision based on a reasonable perception, even if that perception is mistaken or erroneous.[106] For these reasons, Mrs. Ruiz cannot demonstrate DOC's reasons for its employment actions were pretextual and her retaliation claims fail.

### 4.    There is no evidence of retaliation

Even if Mrs. Ruiz were able to establish a prima facie case and pretext, her retaliation claims still fail given the lack of evidence demonstrating DOC's decisions to temporarily reduce her hours and decline to interview her for a permanent position was motivated by retaliatory animus.[107] In fact, strong evidence of *non-retaliation* exists in this case, as Ms. Paterson offered Mrs. Ruiz her preferred schedule and asked Health Pros Northwest to increase her pay as incentives to retain her subsequent to Mrs. Ruiz's complaint of sexual harassment by CO Gaither.[108] Mrs. Ruiz's own subjective beliefs that these employment decisions were based upon retaliation are wholly insufficient to sustain her claims.[109] Mrs. Ruiz's retaliation claims fail at each step of the burden-shifting analysis, providing multiple, independent reasons why Mrs. Ruiz's retaliation claims dismissed with prejudice.

### E.    Plaintiffs' Outrage Claims Fail As A Matter Of Law

To prevail on a claim for outrage, Plaintiffs must prove three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe

---

[105] *Vasquez,* 349 F.3d at 642; *Villiarimo,* 281 F.3d at 1062; *Allfrey,* 770 F. Supp. 2d at 1134.

[106] *Villiarimo,* 281 F.3d at 1065; *Hill v. BCTI Income Fund-I,* 144 Wn.2d 172, 190 n. 14, 23 P.3d 440 (2001), *overruled on other grounds by McClarty v. Totem Elec.,* 157 Wn.2d 214, 137 P.3d 844 (2006).

[107] *See Cannon,* 726 F.Supp.2d at 391-2*; Wali,* 678 F.Supp.2d at 180-1.

[108] Paterson Decl., ¶ 6; Tilger Decl., Ex. A (R. Ruiz Dep. at 75:21-77:6, 79:13-80:13, 185:11-24).

[109] Tilger Decl., Ex. A (R. Ruiz Dep. at 97:18-99:7). *See Wali,* 678 F. Supp. 2d at 181-82 ("Finally, Wali's bare statements regarding the percentage of African–Americans employed by OneSource…and his speculative argument regarding Camacho's supposedly higher rate of pay…are insufficient on their face to raise an inference that Wali was terminated for discriminatory reasons. In short, Wali has "identified no evidence, whether direct or circumstantial, that would permit a reasonable fact-finder to draw an inference that [his] discharge was the result of unlawful discrimination against [him]." (Citations omitted.))

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

17

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

emotional distress on the Plaintiffs' part.[110] Outrage cannot stem from "mere insults, indignities, [or] threats."[111] Causing embarrassment or humiliation will not support imposition of liability on a claim of outrage.[112] Washington courts expect plaintiffs to "be hardened to a certain degree of rough language, unkindness and lack of consideration."[113]

Instead, the first element of an outrage claim requires proof that the conduct was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[114] Whether a plaintiff suffered outrage is normally a question of fact for the jury, but it is initially for the Court to determine as to whether reasonable minds could differ as to whether or not outrage had been committed.[115] In making the initial determination as to whether the conduct complained of was sufficiently extreme to result in liability, the court considers the following: (a) the position occupied by the defendant; (b) whether plaintiff was peculiarly susceptible to emotional distress, and if defendant knew this fact; (c) whether defendant's conduct may have been privileged under the circumstances; (d) the degree of emotional distress caused by a party must be severe as opposed to constituting mere annoyance, inconvenience or the embarrassment which normally occur in a confrontation of the parties; and (e) the actor must be aware that there is a high probability that his or her conduct will cause severe emotional distress and the actor must proceed in a conscious disregard of it.[116]

In this case, Plaintiffs allege that DOC committed the tort of outrage by allowing Offender Handy "to access, obtain, and then utilize Plaintiff's information to pursue his deluded obsessions. The DOC knew the actions of the inmate were occurring, and waited until after

---

[110]*Robel v. Roundup Corp.*, 148 Wn.2d 35, 51, 59 P.3d 611, 619–21 (2002); *Jones v. Rabanco, Ltd.*, 439 F. Supp. 2d 1149, 1169–70 (W.D. Wn. 2006).

[111]*Kloepfel v. Bokor,* 149 Wn.2d 192, 195, 66 P.3d 630 (2003).

[112]*Dicomes v. State,* 113 Wn.2d 612, 630, 782 P.2d 1002 (1989).

[113]*Grimsby v. Samson,* 85 Wn.2d 52, 59, 530 P.2d 291 (1975); *Jones*, 439 F. Supp. 2d at 1169.

[114]*Dicomes,* 113 Wn.2d at 630 (quoting *Grimsby*, 85 Wn.2d at 59); *Jones,* 439 F. Supp. 2d at 1169.

[115]*Robel*, 148 Wn.2d at 51; *Jones,* 439 F. Supp. 2d at 1169.

[116] *Birklid v. Boeing,* 127 Wn.2d 853, 867, 904 P.2d 278 (1995); *Jones,* 439 F. Supp. 2d at 1169-70.

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

18

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean'water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  Plaintiff filed a report to take any remedial action."[117]  Plaintiffs cannot prove that DOC engaged

2  in any extreme or outrageous conduct toward Mrs. Ruiz, or acted intentionally or recklessly.

3  Other than self-serving speculation, Plaintiffs cannot proffer any facts showing DOC "allowed"

4  Offender Handy to contact Mr. Paschen and obtain Mrs. Ruiz's telephone number and address.

5  Even if Plaintiffs had competent evidence demonstrating DOC "allowed" Offender Handy to

6  contact Mrs. Ruiz (which they do not), at most they have demonstrated that DOC acted

7  negligently in inflicting emotional distress. Mere negligence is insufficient to sustain an outrage

8  claim.[118] The Court should therefore dismiss Plaintiffs' outrage claim with prejudice.

9  **F.      Mrs. Ruiz's Defamation Claim Fails As A Matter Of Law**

10         To make out a defamation claim, Mrs. Ruiz must prove four elements: (1) falsity, (2) an

11  unprivileged communication, (3) fault, and (4) damages.[119] The alleged defamatory statement

12  must also be communicated to someone other than the person or persons defamed for liability to

13  attach; in other words, there must be "a publication of the defamation."[120] "Publication" is a legal

14  word of art that includes any communication by the defendant to a third party.[121] Washington

15  long ago rejected the claim that internal communications made in the ordinary course of business

16  should be considered "published" communications.[122]

17         Mrs. Ruiz alleges two instances where she believes DOC defamed her: 1) when

18  Ms. Paterson contacted Health Pros Northwest about missing narcotics after Mrs. Ruiz left

19  mid-shift on September 23, 2015; and 2) information disseminated or posted on "the DOC

---

[117] Tilger Decl., Ex. D (R. Ruiz's Response to Interrogatory No. 8); see also Tilger Decl., Ex. E (J. Ruiz's Response to Interrogatory No. 6.)

[118] *Birklid.*, 127 Wash. 2d at 868, quoting *Grimsby*, 85 Wash.2d at 59 ("…[T]he emotional distress must be inflicted *intentionally or recklessly;* mere negligence is not enough."

[119] *Mark v. Seattle Times*, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981) (affirming dismissal of defamation claim on summary judgment).

[120] *Pate v. Tyee Motor Inn, Inc.*, 77 Wn.2d 819, 821, 467 P.2d 301 (1970) (discussing slander).

[121] *See id.*

[122] *Pate*, 77 Wn.2d at 821; *Prins v. Holland–N. Am. Mortgage Co.*, 107 Wn. 206, 208, 181 P. 680 (1919) (holding no libel for internal communication between officers conducting ordinary business of corporation).

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

19

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean`water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1   Intranet" about Mrs. Ruiz's receipt of letters and/or telephone calls from Offender Handy.[123]

2   Neither communication meets the elements of a defamation claim.

3       **1.      Dissemination of information on the "DOC Intranet" is not publication**

4         Preliminarily, the alleged internal dissemination or posting of information about

5   Mrs. Ruiz's interactions with Offender Handy does not constitute a "publication" for purposes

6   of establishing a defamation claim. Such dissemination or posting constitutes internal

7   communications made in the ordinary course of business. As such, this allegation cannot sustain

8   Mrs. Ruiz's defamation claim.

9       **2.      Mrs. Ruiz cannot show the complained-of statements were provably false**

10        To establish the falsity element of a published statement, Mrs. Ruiz must show that the

11  published offensive statement was "provably false."[124] The burden of proving falsity rests on

12  Mrs. Ruiz.[125] "Statements communicating ideas or opinions cannot support a defamation claim,

13  as false ideas are not actionable."[126] Additionally, statements which are "substantially true" are

14  not false.[127] Stated another way, statements which are merely inaccurate are not actionable.[128]

15  Statements made in a highly critical way are insufficient for defamation.[129] Furthermore,

16  expressions of opinion are protected under the First Amendment and are not actionable.[130]

17        Mrs. Ruiz cannot produce any evidence that either of the statements she complains of are

18  provably false. Ms. Paterson's communication to Health Pros Northwest simply notified the

19  agency about the missing narcotics in an attempt to locate them; it did not accuse Mrs. Ruiz of

20

---

21      [123] Tilger Decl., Ex. A (R. Ruiz Dep. at 113:11-117:24); Ex. D (Response to Interrogatory No. 8). Mrs.

22  Ruiz concedes that the DOC intranet posting did not include her name and was not to her knowledge circulated outside DOC. Tilger Decl., Ex. A (R. Ruiz Dep. at 113:11-115:11).

    [124] *Schmalenberg v. Tacoma News*, 87 Wn. App. 579, 590-91, 943 P.2d 350 (1997).

23      [125] *Id.* at 591.

    [126] *Corbally v. Kennewick Sch. Dist.*, 94 Wn. App. 736, 741, 973 P.2d 1074 (1999).

24      [127] *Mark*, 96 Wn.2d 473.

    [128] *Id.*

25      [129] *Margoles v. Hubbart*, 111 Wn.2d 195, 760 P. 2d 324 (1988).

    [130] *Robel v. Roundup Corp.*, 148 Wn.2d 35, 55, 59 P.3d 611 (2002).

26

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

    20

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean`water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1   theft.[131] Mrs. Ruiz also cannot produce any competent evidence that <u>any</u> information—let alone

2   provably false information—was disseminated internally at DOC regarding her interactions with

3   Offender Handy. Mrs. Ruiz's defamation claim fails because she cannot satisfy this element.

### 3.   The statements Mrs. Ruiz complains of are privileged communications

5   Mrs. Ruiz must also demonstrate that the published, false, offensive statement was not

6   privileged.[132] When the facts are not in dispute as to the circumstances of the alleged defamatory

7   communication, the determination whether a privilege applies is a matter of law for the court to

8   decide.[133]   Communications to a public officer who is authorized to act on the matter

9   communicated on are considered privileged communications.[134] Internal communications

10   regarding a public employee's performance are privileged.[135] An allegedly defamatory statement

11   may also be subject to the common interest privilege, which applies when the declarant and the

12   recipient have a common interest in the subject matter of the communication.[136] This common

13   interest privilege applies to organizations, partnerships and associations and "arises when parties

14   need to speak freely and openly about subjects of common organizational or pecuniary

15   interest."[137]

16   Even if Mrs. Ruiz could demonstrate that either Ms. Paterson's communication to

17   Health Pros Northwest or the alleged dissemination or posting of information about her on the

18   "DOC Intranet" were provably false—which she cannot—she cannot establish that the

19   complained-of communications are unprivileged. Ms. Paterson's communication with

20   Health Pros Northwest is subject to the common interest privilege, as both entities had a common

21   interest in Mrs. Ruiz's performance of her duties with respect to securing narcotics at WCC.

22

23   [131] Paterson Decl., ¶ 13.

   [132] *Mark,* 96 Wn.2d at 486.

24   [133]*Valdez-Zontek v. Eastmont School Dist.,* 154 Wn. App. 147, 162, 225 P.3d 339 (2010).

   [134]*Gilman v. MacDonald*, 74 Wn. App. 733, 738, 875 P.2d 697 (1994).

25   [135]*Stidham v. State Dept. of Licensing*, 30 Wn. App. 611, 615, 637 P.2d 970 (1981); *see also Prins*, 107
   Wn. at 208 (internal corporate communications).

26   [136]*Valdez-Zontek.,* 154 Wn. App. at 162.

   [137] *Id., quoting Moe v. Wise*, 97 Wn. App. 950, 958, 989 P.2d 1148 (1999).

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

21

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

Likewise, any dissemination or posting of information about Mrs. Ruiz's interactions with Offender Handy was communication also subject to the common interest privilege as it regarded the common organizational interest of institutional and staff safety and security. Mrs. Ruiz's inability to show that these complained-of communications were unprivileged is another basis on which her defamation claim fails and should be dismissed.

**4. Mrs. Ruiz cannot show the complained-of statements were made with actual malice**

The third element, fault, requires Mrs. Ruiz, as a public figure, to offer evidence of actual malice.[138] For this analysis, Mrs. Ruiz is a public official because her conduct involved the manner in which she performed her job duties as a Licensed Practical Nurse at WCC pursuant to a public contract.[139] Mrs. Ruiz has not offered, nor can she offer, any evidence of actual malice by DOC in the two alleged instances she cites in support of her defamation claim. Mrs. Ruiz's failure to meet this element is another independent basis for the Court to dismiss this claim.

**G.    Plaintiffs' Invasion of Privacy Claims Fail As A Matter Of Law**

A plaintiff may sue the government for common law privacy invasion if it intentionally intrudes on his or her solitude, seclusion, or private affairs.[140] The defendant's intrusion, whether physical or nonphysical, must substantially interfere with the plaintiff's seclusion in a manner highly offensive or objectionable to a reasonable person.[141]  And, "[t]he intruder must have acted deliberately to achieve the result, with the certain belief that the result would happen."[142] While "[i]ntent is not a factor" under article I, section 7 of [Washington's] constitution, our Supreme

---

[138] *Corbally*, 94 Wn. App. at 741.

[139] *Corbally*, 94 Wn. App. at 741 (teacher performing job duties pursuant to public contract is public figure); *Corey v. Pierce County,* 154 Wn. App. 752, 762, 225 P.3d 367 (2010) (prosecutor for county performing job duties pursuant to public contract is public figure); *Valdez-Zontek.,*154 Wn. App. at 162 (school special programs director performing job duties pursuant to public contract is public figure).

[140] *Youker v. Douglas Cty.*, 178 Wash. App. 793, 797–98, 327 P.3d 1243, 1245 (2014); *Reid v. Pierce County,* 136 Wash.2d 195, 206, 213–14, 961 P.2d 333 (1998); Restatement (Second) of Torts § 652B (1977).

[141] *Mark v. Seattle Times,* 96 Wash.2d 473, 497, 635 P.2d 1081 (1981) (quoting and citing Restatement (Second) of Torts § 652B & cmt. d).

[142] *Fisher v. Dep't of Health,* 125 Wash. App. 869, 879, 106 P.3d 836 (2005).

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

22

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean`water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  Court has refused to create a constitutional cause of action for governmental privacy

2  invasions.[143]

3       Plaintiffs allege DOC invaded their privacy by listening to Offender Handy's attempts to

4  call Mrs. Ruiz without intervening to stop him or warn her.[144] Plaintiffs cannot produce any

5  competent evidence to prove this allegation. Even if Plaintiffs' allegations are true, they do not

6  support an invasion of privacy claim because they cannot establish that DOC engaged in any

7  activity that substantially intruded into their private affairs. Their claim must be dismissed.

8  **H.   Plaintiffs' § 1983 Claims Fail As A Matter Of Law**

9       To state a claim under 42 U.S.C. § 1983, Plaintiffs must allege 1) the violation of a right

10  secured by the Constitution or the law of the United States and 2) the deprivation was committed

11  by a person acting under the color of law.[145] A state agency is not a "person" under 42 U.S.C.

12  § 1983.[146] A state cannot be sued by a citizen of that state in federal court.[147] More than

13  conclusory allegations are required to support a civil rights action; a complaint will be dismissed

14  where allegations are vague and conclusory.[148] In §1983 actions against individuals, facts must

15  be provided that demonstrate a violation of a clearly established right.[149]

16       Plaintiffs' Second Amended Complaint attributes the civil rights claims only to the

17  Department of Corrections.[150] The Department is a state agency, not a "person" for the purposes of

18  § 1983 claims. Nowhere in their § 1983 claim do they specify who the responsible individuals are

19  or what they did that deprived them of rights secured by the Constitution or law. Instead, they appear

20  to allege the Department is vicariously liable for its employees' actions[151]—an erroneous notion

21

22  _____
    [143] *Youker*, 178 Wash. App. at 797; quoting *Reid*, 136 Wash.2d at 213–14 (internal citations omitted).
    [144] Tilger Decl., Ex. A (R. Ruiz Dep. at 117:25-119:25).
23  [145]*West v. Atkins*, 487 U.S. 42, 48 (1988).
    [146] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).
24  [147] *Will*, 491 U.S. at 70.
    [148] *White*, 928 F. Supp. at 1156.
25  [149] *Id.*
    [150] Dkt. 23 at ¶5.11.
26  [151] Dkt. 23 at ¶5.11.

DEFENDANT STATE OF                                    23                    ATTORNEY GENERAL OF WASHINGTON
WASHINGTON DEPARTMENT OF                                                        Torts Division
CORRECTIONS' MOTION FOR                                                      7141 Clean`water Drive SW
SUMMARY JUDGMENT                                                                  PO Box 40126
No. 16-06037-RBL                                                             Olympia, WA 98504-0126
                                                                                (360) 586-6300

1   because § 1983 liability cannot be premised on respondeat superior.[152] Plaintiffs' Second Amended

2   Complaint fails to identify how these unnamed individuals have acted under the color of state law

3   and deprived them of any rights, privileges and immunities secured by the Constitution or other

4   law. While Plaintiffs could request leave to amend their Complaint to name individual defendants,

5   amendment would be futile based upon their inability to identify a violation of a constitutionally

6   protected right.[153] Plaintiffs' §1983 claim should therefore be dismissed.

7   **I.      Plaintiffs' Negligence Claims Fail As A Matter Of Law**

8           The threshold determination in any claim of negligence is the existence of a duty to the

9   plaintiff, which is a question of law.[154] Washington common law, however, does not recognize

10   a general claim for negligent investigation because of the potential chilling effect such claims

11   would have on investigations.[155] Generally, a claim for negligent investigation does not exist

12   under Washington common law.[156] The courts have previously refused to recognize a claim for

13   negligent investigation against law enforcement officials and other investigators.[157] The court

14   has also ruled that administrative code provisions governing school district investigations do not

15   establish a negligent investigation cause of action.[158]

16           Here, the Plaintiffs allege that DOC "acted negligently in the investigation of harassment

17   directed towards Mrs. Ruiz."[159] However, there is no legally recognized "negligent investigation

18   of harassment" claim available to Mrs. Ruiz. Any complaints she has regarding the adequacy of

19   DOC's investigations of her complaints are subsumed by her gender-based harassment claim.

---

20   [152]  *Webb v. Sloan,* 330 F.3d 1158 (9th Cir. 2003).

21   [153]  *See Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987); *See also Lucas v. Dep't of Corrections,* 66 F.3d 245, 248 (9th Cir. 1995*)*.

22   [154]  *Taylor v. Stevens County,* 111 Wn.2d 159, 163, 168, 759 P.2d 447 (1988).

[155]  *Janaszak v. State*, 173 Wn. App. 703, 724–25, 297 P.3d 723, 735 (2013).

23   [156]*Pettis v. State* 98 Wn. App. 553, 558, 990 P.2d 453 (1999).

[157]*Janaszak*, 173 Wn. App. at 724–25; *Fondren v. Klickitat County,* 79 Wn. App. 850, 862–63, 905 P.2d 928 (1995); *Donaldson v. City of Seattle,* 65 Wn. App. 661, 671, 831 P.2d 1098 (1992).

24   [158]  *Corbally v. Kennewick School Dist.*, 94 Wn. App. 736, 740, 973 P.2d 1074 (1999). The statutory exception for DSHS child abuse investigations under RCW 26.44.050 is grounded in the specific statutory duty

25   DSHS has to investigate. *Id.* at 740.

[159]Dkt. 23 at ¶ 5.12.

26

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

Mr. Ruiz also cannot show DOC owed him any duty regarding its investigation of Mrs. Ruiz's harassment allegations.[160] Nor can Mr. Ruiz show that he has any actionable independent claim against DOC.[161] Plaintiffs' negligence claims fail as a matter of law and should be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Ronni and John Ruiz's claims against the Department of Corrections fail as factually and legally insufficient. The Court should therefore grant the Department's Motion for Summary Judgment and dismiss all their claims with prejudice.

DATED this 4th day of October 2018.

ROBERT W. FERGUSON
Attorney General


/s/ *Amee J. Tilger*
AMEE J. TILGER, WSBA No. 34613
Assistant Attorney General
Attorney for Defendant Department of Corrections
PO Box 40126, Olympia, WA 98504-0126
(360) 586-6329

---

[160] Tilger Decl., Ex. B (J. Ruiz Dep. at 67:18-69:19).
[161] Tilger Decl., Ex. B. (J. Ruiz Dep. at 67:3-6, 102:24-103:2, 103:6-15).

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

25

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean`water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300

## PROOF OF SERVICE

I certify that I served a true and correct copy of this document on all parties or their counsel of record on the date below as follows:

| | |
|---|---|
| PAUL BOUDREAUX<br>RODGERS KEE & CARD PS<br>324 WEST BAY DR NW STE 201<br>OLYMPIA WA  98502 | ☐ U.S. Mail via state Consolidated Mail<br>   Service (with proper postage affixed)<br>☐ Courtesy copy via facsimile:<br>☒ Via CM/ECF system:<br>   paul@buddbaylaw.com<br>☐ ABC/Legal Messenger |
| ALEX CASEY<br>CHRISTIE LAW GROUP PLLC<br>2100 WESTLAKE AVE N STE 206<br>SEATTLE WA  98109 | ☐ U.S. Mail via state Consolidated Mail<br>   Service (with proper postage affixed)<br>☐ Courtesy copy via facsimile:<br>☒ Via CM/ECF system:<br>   alex@christielawgroup.com<br>   tom@christielawgroup.com<br>   laura@christielawgroup.com<br>☐ ABC/Legal Messenger |
| ANDREW PASCHEN<br>8031 WEST SUNFIRE DR<br>TUSCON AZ  85743 | ☒ U.S. Mail via state Consolidated Mail<br>   Service (with proper postage affixed)<br>☐ Courtesy copy via facsimile:<br>☒ Courtesy copy via CM/ECF system:<br>   Andrew.Paschen@gmail.com<br>☐ ABC/Legal Messenger |

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED this 4th day of October 2018, at Olympia, Washington.

*/s/ Amee J. Tilger*_____
AMEE J. TILGER
Assistant Attorney General

DEFENDANT STATE OF
WASHINGTON DEPARTMENT OF
CORRECTIONS' MOTION FOR
SUMMARY JUDGMENT
No. 16-06037-RBL

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Clean`water Drive SW
PO Box 40126
Olympia, WA 98504-0126
(360) 586-6300